CHISHOLM v. PREFERRED BANKERS' LIFE ASSURANCE CO.

1. TRIAL—INSTRUCTIONS—CONCLUSIONS FROM TESTIMONY.
   In an action for breach of contract, where the character of the contract was in question, a requested instruction, embodying a conclusion as to what the contract was as gathered from plaintiff's testimony, was properly refused; it being for the jury, in determining the understanding of the parties, to decide as to the effect of such testimony.

2. CONTRACT OF EMPLOYMENT—DAMAGES FOR BREACH.
   The right of an employé to recover in full the damages sustained by reason of a wrongful discharge before the expiration of his term of service is not lost by his failure to avail himself of an opportunity to work for his employer at reduced wages, where the proposition was such that its acceptance might have been construed as a consent to a modification of the original contract, and as an abandonment of his claim thereunder.

3. Same—Duty to Seek Other Employment — Unreasonable Delay.

Whether 18 days is an unreasonable length of time for an employé, who has been wrongfully discharged, to spend in seeking an adjustment with his employer, so that he should be charged, in an action for a breach of the contract, with the amount that he might have earned in other employment during such period, is a question for the jury.

Error to Ingham; Person, J. Submitted January 14, 1897. Decided March 10, 1897.

*Assumpsit* by D. Hewitt Chisholm against the Preferred Bankers' Life Assurance Company for the breach of a contract of employment. From a judgment for plaintiff, defendant brings error. Affirmed.

*Ira E. Randall* (*Frank E. Robson*, of counsel), for appellant.

*Arthur D. Prosser*, for appellee.

Hooker, J. The plaintiff's action rests upon a contract of hiring under which he claims that he engaged to solicit life insurance, for which service the defendant agreed to pay him $100 per month for two months, beginning November 20, 1893, and that he should receive a commission on certain business, also a premium for which agents of his class were to compete, if his business should entitle him to it. He claims that he was wrongfully discharged, and brings action to recover the balance of his salary of $100 per month, and the premium of $50, which he claims to have earned, waiving a claim for commissions. The defendant admits that there was a contract of hiring, service, and discharge, but asserts that the contract was a hiring to work under the direction of the defendant upon commission, said commission to be guaranteed to amount to $100 per month. It also claims that the plaintiff did not faithfully discharge his duty under the contract, and refused to be directed by defendant, and that this was a sufficient cause for defendant's putting

an end to contract relations, by discharging him; and, third, it alleges that after such discharge the plaintiff had an opportunity to work for the defendant during the unexpired period, upon other terms, which would have lessened his injury had he seen fit to avail himself of the opportunity. The errors relied on are:

*First.* The refusal of the court to instruct the jury as requested by the defendant, viz.:

"(1) The contract for employment, as testified to by the plaintiff himself, is that he was employed on a guaranty of $100 per month for two months and if the earnings of the plaintiff, based upon 80 per cent. of the membership fee on the insurance written by him, amounted to more than $100, plaintiff was to have such excess; and that he was also to have a right to compete during 60 days for the premiums offered by the company,—for the agent who should, within 60 days from November 20th, write the largest amount of insurance, $75; the next largest, $50; and the third largest, $25.

"(2) The testimony of the plaintiff, taken together, shows that the contract was intended to be a commission contract, and that the effect of the guaranty was that such commission should amount to at least $100 a month. This is apparent from the fact that, for the plaintiff to secure the full compensation he might be entitled. to under the contract, it was necessary for him to keep an account of the membership fees, and to compute 80 per cent. thereon."

*Second.* The exclusion from consideration by the jury of the circumstances offered by way of mitigation of damages.

*Third.* The refusal to give defendant's fifth request to charge, viz.:

" (5) Even though Mr. Randall employed Mr. Chisholm for two months, and agreed to guarantee him $100 a month for two months, yet Mr. Chisholm was bound to work faithfully under the direction of Mr. Randall; and if the jury find that Mr. Chisholm did not so work, but neglected or refused to work when and where he was directed by Mr. Randall, Mr. Randall had a right to terminate the employment; and, if he did so terminate the employment for such reason, then the plaintiff cannot recover for any time after such employment was ended."

We are of the opinion that the defendant was not enti-
tled to the instruction embodied in its first and second
requests.   It was not for the court to state a conclusion
as to what plaintiff testified, or the effect of his testimony,
it being for the jury to determine the understanding of
the parties.   The plaintiff gave some testimony tending
to show that he was to be paid $100 per month, and,
if commissions computed at 80 per cent. of certain fees
received exceeded $100 per month, he was to be paid such
excess.   It is said that it was important that these re-
quests should be given, because it affected the question of
damages; that the plaintiff tried his case upon the theory
that his action was for wages.   The charge submitted the
case upon the special count, and the jury were instructed
that, if the plaintiff failed to establish the contract as
alleged, he could not recover; and we see no reason
for determining whether that was an agreement to work
according to directions at $100 per month for two months,
or upon a guaranty that commissions computed at an
agreed percentage of earnings should equal $100 per
month.   The court instructed the jury that the plaintiff
could not recover unless (1) he established the contract;
(2) it was shown that the defendant broke the contract by
unjustly discharging the plaintiff; and that (3), these
things being established, the measure of damages was the
agreed price.   Under the evidence, we fail to see how the
case could have been submitted upon any other theory.

In mitigation of damages, counsel for the defendant
sought to show that the plaintiff was given an opportunity
to perform the same work for a less price, and did
not avail himself of the opportunity.   No complaint is
made that the court improperly excluded evidence upon
this subject, but complaint is made that it was not sub-
mitted to the jury, and that the court erred in refusing to
give defendant's third request, viz.:

"(3) It is claimed by defendant that, at the close of the
first month, Mr. Randall told the plaintiff that he could
not continue the guaranty for another month, but that he

might continue to work on commission as before; that plaintiff refused to work unless the guaranty was continued; and the plaintiff says he made no effort to get other employment. If the jury find from the evidence that plaintiff was discharged from his employment, but that he could have continued such employment on the basis of 80 per cent. of the membership fee, then, under such circumstances, it was his duty to continue his work, and do the best he could to earn the sum he claimed was guaranteed to him, and to look to the company only for any deficiency."

The request was refused, but the court instructed the jury that—

"The plaintiff should be allowed damages at the contract price, just the same as if he had worked, unless he wrongfully and improperly failed to get employment during the balance of the period, * * * providing always that he had worked faithfully and honestly in the employ of his employer, the defendant."

He added:

"Now, to make it square upon the record, I want to state this: It is the duty of a man, when he is discharged wrongfully from employment, to avail himself of any opportunity that he may have to work for some one else, and thereby reduce the amount of loss. It is not necessary to go outside of his city or township to hunt work, neither is it required that he shall accept work of a lower or different grade. But, gentlemen, for the purpose of meeting a certain feature of this case here,—namely, that Mr. Randall offered to continue the employment, as Randall claims, for a certain commission,—I will say to you that need not be taken into consideration. I have, since last night, had an opportunity to reflect upon the matter, and examine the law regarding it, and I say that an offer of an employer who breaks the contract by discharging the employé, to continue the employé at a lower rate of wages, or in a less beneficial manner for the employed, will not and need not be taken into consideration as a mitigation of damages or to reduce them. So, you need not take into consideration the question of damages, if you come to that, any offer on the part of Mr. Randall, if it was made, to continue the employment of Mr. Chisholm at

a lower or less beneficial scale of wages.   As I said, gentlemen, it is the duty of a man who has been wrongfully discharged from a contract of labor to avail himself of every reasonable opportunity that offers itself to get employment and earn wages, except as limited by the rules I have given you; and in that behalf it becomes his duty to reasonably look around in his vicinity for employment of the same general grade and character as that from which he has been discharged, unless he is excused from so doing by reasonable and proper circumstances.   It was the duty of Mr. Chisholm to endeavor reasonably to obtain employment in the city of Lansing, of such a general grade as he had been employed in, and was discharged from, if he was discharged, unless he had some excuse for not doing so.   He alleges as an excuse that the time which elapsed between the time of his alleged discharge, on the 2d of January, and the expiration of the contract, on the 20th, was occupied by him in endeavoring to effect a settlement with the defendant assurance company, both by seeing Mr. Randall and seeing the trustees of the company; and that he worked in good faith and honesty to obtain such settlement, and for that reason did not look around for other employment."

Under the cases of *Farrell* v. *School District*, 98 Mich. 43, and *Allen* v. *Whitlark*, 99 Mich. 492, the burden of showing a failure by the plaintiff to lessen the damage, by availing himself of an opportunity to get other work, is upon the defendant.   It is claimed that he should have accepted an offer of the same work upon another or different contract offered him by the defendant.   Some cases are cited in support of the proposition that it was the plaintiff's duty to accept this offer, and they seem to sustain it.   *Bigelow* v. *Manufacturing Co.*, 39 Hun, 599, *Beymer* v. *McBride*, 37 Iowa, 114; *Birdsong* v. *Ellis*, 62 Miss. 418.; *Squire* v. *Wright*, 1 Mo. App. 172. On the contrary, in the case of *People's Co-operative Ass'n* v. *Lloyd*, 77 Ala. 387, it was held that an offer by the employer to retain the employé in its service if he would consent to a reduction of wages might be rejected, for, if he had so consented and remained in the service, this would have operated as a modification of the contract

and an abandonment of all claims to higher wages. 14 Am. & Eng. Enc. Law, p. 796, § 10, and note. It is clear that one who has been prevented from performing a contract of service should not be required to accept a new employment under circumstances which permit the claim that he consents to a modification of the contract, and an abandonment of his right of action; and, ordinarily, acceptance of service in silence would at least give color to a claim that the contract was modified by consent, tacit if not express. See *Brighton* v. *Railway Co.*, 103 Mich. 426, and cases cited. It is, of course, possible that an offer of employment might be couched in such terms as to save the rights of a discharged servant, and, when it is, it may be that the evidence should go to the jury, with a view to mitigation of damages; but we discover no evidence in this case tending to show that such employment was offered under circumstances inconsistent with the condition that such employment should be a modification of the contract, and the plaintiff could not safely accept the offer. Hence the instruction given by the court upon the subject should not be held erroneous, were we to accept the doctrine contended for.

The plaintiff testified that for a period of 18 days ne sought no other employment, for the reason that he spent the time in an endeavor to adjust his claim against the defendant. The court left it to the jury to determine whether this was a reasonable excuse for not seeking other employment. It is contended that this was error. The plaintiff had a right to try to obtain justice from the defendant, and to use some time for the purpose. How much time was necessary and proper depends upon the circumstances, and is a question of fact. We think it was not the duty of the trial court to fix a limit to the time to be so used, and his only alternative was to submit the question to the jury.

The judgment is affirmed.

LONG, C. J., GRANT and MONTGOMERY, JJ., concurred. MOORE, J., did not sit.