## MILLER v. ABRAHAM.

### Opinion delivered June 18, 1923.

1. MASTER AND SERVANT—WRONGFUL DISCHARGE—MITIGATION OF DAMAGES.—An employee who is wrongfully discharged before expiration of the period of employment is not required, in order to minimize his damages, to accept an offer from his employer to work for him at a reduced salary, his only duty being to use reasonable care to seek other employment.

2. MASTER AND SERVANT—WRONGFUL DISCHARGE—BURDEN OF PROOF.—Where an employee is wrongfully discharged before the end of his term of employment, the burden is on the employer to prove that the employee could have reduced his damages by obtaining other employment.

3. MASTER AND SERVANT—WRONGFUL DISCHARGE.—Not only an absolute refusal by the master to perform a contract of employment, but also any clear manifestation by words or acts of an intention not to carry out the contract, will authorize the other party to treat this as a cancellation of the contract.

Appeal from Mississippi Circuit Court, Osceola District; *W. W. Bandy*, Judge; affirmed.

### STATEMENT OF FACTS.

This was an action by A. Abraham against Ike Miller to recover damages for a breach of a contract by which the defendant hired the plaintiff to work for him as salesman in his store for the period of one year.

According to the testimony of A. Abraham, he began to work for Ike Miller on July 1, 1920, and worked for him until the first day of January, 1921, in his store at Osceola, Ark. When he was employed, Abraham lived at Helena, and Miller agreed to employ him for one year at a salary of $275 per month, and Miller also agreed to rent him a dwelling house for $30 per month. On November 25, 1920, Miller told Abraham that his business was dull, and that he did not think that he ought to pay him more than $137.50 per month. He agreed to pay him that salary if he would stay on. Later on during the year the subject was again talked of between the parties, and Miller told Abraham not to come to work unless he would work for $137.50 per month. Abraham declined to work for Miller at that price, and a few days later gave up his keys to the store to another employee of Miller. Miller then demanded possession of his dwelling house, and notified Abraham to vacate it, which he did. Abraham made an effort to obtain work of a suitable kind, but was unable to do so, except that he made $60 between the date of his discharge and the end of his term of employment.

According to the evidence adduced by the defendant, he did not actually discharge the plaintiff, but only suggested to him that, on account of the depression in business, he ought to be willing to have his salary cut in half. The defendant himself denied in positive terms that he discharged the plaintiff, and said that he only suggested to him that he ought to work for $137.50, as that amount was all that he could earn on account of the business depression. The defendant also stated that the

plaintiff neglected his work and was not as good a sales-man as he had been when he had employed him at a former period of time. He asked plaintiff to stay and work for him at $137.50 a month, and this the plaintiff declined to do.

The jury returned a verdict for the plaintiff in the sum of $1,590, and from the judgment rendered the defendant duly prosecuted an appeal to this court.

*A. F. Barham,* for appellant.

If appellee was wrongfully discharged by appellant, he was bound to use reasonable care in entering other employment of the same kind, and thus reduced the damages. It was his duty to continue work for appellant at the $137.50 offered him and only sue for the difference between that amount and the contract price. The court erred in not so declaring the law as requested in appellant's instruction No. 1. 18 R. C. L. 530, note 40; 1 Mo. App. 172, and cases cited in note 6, L. R. A. (N. S.) 105. He was only entitled to recover, if at all, an amount equal to the stipulated wages, less what he may, or with reasonable diligence could, have earned in other employment. 58 Ark. 617. Must have kept himself in readiness to perform the contract on his part. 39 Ark. 287; 91 Ark. 212. The rule of constructive service is correctly stated in 18 R. C. L. 525, note 37; see also 8 A L. R. 338; 18 R. C. L. 529, note 39. The court erred in giving instruction 3. 26 Cyc. 290 and 990, note; 58 Ark. 506. The judgment should be reversed, and appellant should in any event have credit for the amount appellee would have earned at the rate offered by appellant.

*S. L. Gladish,* for appellee.

The judgment should be affirmed for appellant's failure to comply with Rule 9. He has not made an abstract as required. 74 Ark. 320; 136 Ark. 188. Appellee was not required to accept service of appellant at one-half the price stipulated in his contract. Had he done so, he could not have recovered damages for breach of

his original contract of employment. Instruction No. 1 requested by appellant was properly refused. His citation 18 R. C. L. 530, note 40, shows it is not the law. No error in giving No. 3, which is a correct statement of the law. 78 Ark. 336. See also 7 Wash. 437; 103 Mich. 516; 152 Ill. 59; 137 N. Y. 471. Appellee, being wrongfully discharged, was entitled to recover as damages the wages stipulated in the contract, less whatever amount he was able to earn during the time in similar employment that he could procure. 58 Ark. 617. The burden of proof is on the employer to show that the servant might have obtained similar employment. 70 Ark. 509; 91 Ark. 212; 9 Ark. 394. It is apparent that this appeal is for delay merely, and the penalty should be assessed. 96 S. W. 1062.

HART, J., (after stating the facts). The main objection to the recovery had is that the defendant offered to receive the plaintiff back into his employment at $137.50 a month, and that the plaintiff ought to have accepted the offer and in this manner have kept down the payments. We cannot agree with the defendant in this contention. According to the evidence of the plaintiff, the defendant only agreed to keep him in his employment if he would work for him at $137.50 in lieu of the $275 per month provided in the contract of employment.

According to the testimony of the plaintiff, this was a plain proposition to give up the old contract and to accept in lieu thereof a new one, less beneficial to the plaintiff. This is to say, the new offer of the defendant to the plaintiff was to continue in the same employment at a less price. If the plaintiff had agreed to this, he would have virtually surrendered the old contract and have made a new one. If he had agreed to a change or modification of the old contract, he would have been bound by its terms and could not have recovered for a breach of the original contract of employment. After the defendant had virtually declined to give the plain-

tiff employment under the original contract, there was no further duty on the plaintiff's part to be in readiness to perform. If the testimony of the plaintiff is true, his only further duty was to use reasonable care in entering into other employment of the same kind, and thus reduce the damages. The case was submitted to the jury on this theory. *VanWinkle* v. *Satterfield,* 58 Ark. 617.

This case also decides that the burden of proof was on the defendant to show that the plaintiff might have obtained similar employment. The reason is that the failure of the servant to obtain other employment does not affect his right of action, but only goes in reduction of damages.

It is also contended that the court erred in giving instruction No. 3, which is as follows: "If you find from the proof that the conduct of the defendant evinced the fact that he would no longer be bound by the contract, or if there was a clear manifestation by words or acts of his intention not to perform his part of the contract according to its terms, such action or conditions were sufficient to authorize the plaintiff to treat the contract as repudiated."

There was no error in giving this instruction. According to the testimony of the plaintiff, the defendant told him that he would not keep him during the remainder of his term of service unless he would agree to work for a reduced salary. The jury might have found, from this declaration of the defendant, an intention to be no longer bound by the contract, and this court has held that not only an absolute refusal in words to perform a contract, but also any clear manifestation, by words or acts, of an intention not to carry out the contract, will authorize the other party to treat this as a cancellation of the contract and to bring action for the breach thereof. *Spencer Medicine Co.* v. *Hall,* 78 Ark. 336.

The instructions asked for by the defendant and refused by the court were erroneous and need not be set out in full. It is only necessary to say that they carry with them an obligation on the part of the plaintiff to

have remained with the defendant and worked for him at $137.50 per month if he could not get employment in a similar line of business elsewhere. This qualification was not correct, for the reason stated above. The plaintiff was not obliged to remain in Osceola or to tender his services to the defendant after they had been once definitely rejected. According to the testimony of the plaintiff, he made reasonable efforts to procure similar employment elsewhere, but failed.

The testimony of the parties to the contract was in direct and irreconcilable conflict. The court submitted their respective theories to the jury, under proper instruction, and the verdict in favor of the plaintiff is warranted by his testimony.

There is no prejudicial error in the record, and the judgment will be affirmed.